## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>                    Plaintiff,<br><br>           v.<br><br>KTG HOSPITALITY, LLC, d/b/a WALL STREET GRILL,<br><br>                    Defendant. | CIVIL ACTION NO. 1:24-CV-7376<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Charging Party Alina Cuetlatch ("Charging Party"), who was affected by such unlawful employment practices. As alleged below, the United States Equal Employment Opportunity Commission ("EEOC") alleges that Defendant KTG Hospitality, LLC, d/b/a Wall Street Grill ("Wall Street Grill" or "Defendant") discriminated against Charging Party by subjecting her to a hostile work environment based on sex and constructively terminating her employment by maintaining working conditions that were so intolerable that she was compelled to resign.

### JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The unlawful acts alleged below were committed within the jurisdiction of the United States District Court for the Southern District of New York.

## PARTIES

3. Plaintiff, the United States Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII of the Civil Rights Act and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been a corporation organized under the laws of the State of New York, doing business in the State of New York and the County of New York, and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant has been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## ADMINISTRATIVE PREREQUISITES

6. More than thirty (30) days prior to the institution of this lawsuit, Charging Party filed a charge of discrimination (EEOC Charge No. 520-2022-07501) with the EEOC, alleging violations of Title VII by Defendant.

7. On April 2, 2024, the EEOC issued a Letter of Determination to Defendant, finding reasonable cause to believe that Defendant violated Title VII as to Charging Party.

8. The EEOC invited Defendant to join with the EEOC in informal methods of conciliation to endeavor to eliminate its unlawful practices and provide appropriate relief.

9. The EEOC engaged in communications with Defendant so as to provide it the opportunity to remedy the discriminatory practices described in the Letters of Determination.

10. The EEOC was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. On July 19, 2024, the EEOC issued to Defendant a Notice of Failure of Conciliation, advising Defendant that the Commission was unable to secure a conciliation agreement acceptable to the EEOC.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

13. Defendant owns and operates Wall Street Grill, a fine dining restaurant located at 128 Pearl Street, New York, New York.

14. At all relevant times, Executive Chef Joseph Paulino ("Executive Chef") managed Defendant's kitchen.

15. The Executive Chef had the authority to hire, fire, and discipline Defendant's kitchen staff.

16. The Executive Chef directly supervised Defendant's kitchen staff and directed the work of kitchen employees.

17. Between approximately July 2020 until June 2021, Omar Luna worked as sous chef in Defendant's kitchen.

18. Between approximately June 2021 and at least August 18, 2022, Efrain Ramos worked as sous chef in Defendant's kitchen. Between at least June 30, 2020 and his promotion to sous chef in or around June 2021, Ramos worked as a line cook in Defendant's kitchen.

19. Between approximately September 2021 and the end of Charging Party's employment in or around August 18, 2022, Fredit Ramon worked as a line cook in Defendant's kitchen.

20. The sous chef position also directly supervised Defendant's kitchen staff and directed the work of employees in Defendant's kitchen.

21. Charging Party began working in Defendant's kitchen as a pastry cook on or about June 30, 2020.

22. Charging Party was typically the only female employee working in the kitchen.

23. Charging Party typically worked four to five shifts per week.

24. The Executive Chef was present in Defendant's kitchen nearly every shift that Charging Party worked.

25. Defendant's kitchen is a large, open commercial kitchen with open sightlines. Employees could see one another while working at their respective workstations, and could often hear employees speaking at another side of the room if the employee spoke loudly.

**Defendant Subjected the Charging Party to a Hostile Work Environment Based on Sex.**

26. Between June 2020 and August 2022, the Executive Chef and/or male kitchen employees working under his direction including, but not limited to, Efrain Ramos and Fredit Ramon, subjected Charging Party to unwelcome sex-based and sexual comments, conduct, and non-consensual physical touching.

27. The Executive Chef and male kitchen staff watched pornographic videos in Defendant's kitchen and commented loudly on the performers in English and Spanish.

28. The Executive Chef and male kitchen staff used produce, like cucumbers and carrots, to make vulgar sexual gestures and imitate male genitalia.

29. The Executive Chef and male kitchen staff motioned toward their genitalia and made sexual movements in the air.

30. The Executive Chef and male kitchen staff leered at the female bookkeeper via a security camera feed via cell phone and made lewd and mocking comments regarding the bookkeeper's body.

31. Male kitchen staff frequently talked about having sexual relations with or dating Charging Party in Charging Party's presence.

32. Male kitchen staff talked about sexual encounters in Charging Party's presence and invited Charging Party to join.

33. Male kitchen staff touched Charging Party without her consent on her hip, waist, and the small of her back.

34. Male kitchen staff regularly and unnecessarily passed uncomfortably close to Charging Party's workstation so that she would have to press her body against the counter to avoid being subjected to more unwelcome physical contact, and laughed at her when she avoided their threatened physical contact.

35. Male kitchen staff regularly called Charging Party derogatory names, including "pinche enana," and "pinche vieja."

36. One male staff member, Fredit Ramon, asked Charging Party out on dates at least once per week.

37. Ramon made "spanking" motions in the presence of other male workers when Charging Party bent down to retrieve items, subjecting Charging Party to laughter and ridicule.

38. Charging Party objected to the comments and conduct, asked male kitchen staff to stop, and asked male kitchen staff not to do it again.

39. When Charging Party rejected Ramon's advances or confronted him about his conduct toward her, Ramon responded by yelling at her, vandalizing her workstation, and sabotaging her work.

40. In roughly June 2022, Ramon followed Charging Party into the restaurant's walk-in refrigerator, closed the door, and—among other things—yelled, "Chingada, not sure why you get like this, you should talk to me." Ramon also told Charging Party, "when I get mad, you don't know how I get." Charging Party felt physically threatened during the confrontation and attempted to run out of the refrigerator.

### Defendant Was Aware of the Harassment that Charging Party Suffered, But Ignored and Minimized Her Repeated Complaints.

41. Defendant knew or should have known about the existence of a hostile work environment but took no action to prevent, stop, or remedy it.

42. The Executive Chef was present in Defendant's kitchen for nearly all of the conduct described in paragraphs 26-40.

43. Page 14 of Defendant's Employee Handbook contains a "Harassment Complaint Procedure" which provides, "[c]omplaints regarding harassment or retaliation may be oral or in writing."

44. Defendant's Harassment Complaint Procedure further states that "[a]ll reported incidents of prohibited harassment will be promptly investigated."

45. Defendant did not investigate any complaints of harassment that Charging Party or others made on her behalf during her employment with Defendant.

46. Charging Party complained to the Executive Chef about Ramon's unwelcome comments, jokes, insults and invitations, but he mocked her saying in English, "oh no no, no complain, Freddy [Ramon] loves you" or "Don't worry, Alina. He's just in love with you."

47. Charging Party also complained to the Executive Chef each time that Ramon destroyed her deserts, but he each time he rolled his eyes and told Charging Party to salvage what she could.

48. Charging Party complained to sous chef Luna about Ramon's sexual comments, jokes, and asking her on dates. Luna and a bookkeeper advocated for Charging Party by telling male kitchen staff to stop bothering her.

49. Luna also reported the unwelcome comments and conduct of a sexual nature that male kitchen staff made to Charging Party to the Executive Chef roughly one to two times per week between September 2020 and June 2021.

50. The Executive Chef did not take action to stop the harassment from continuing, to remedy it, or to prevent it from happening in the future.

### The Harassment and Intimidation Intensified in July and August 2022.

51. On or around July 23, 2022, Charging Party arrived at work and found a straw shaped like a penis taped to her workstation with a note reading, "This is for you, so that you can eat it."

52. Charging Party took a picture of the penis straw and sent it to the Executive Chef.

53. On July 23, 2022, the Executive Chef and General Manager Danny Reina met with Defendant's kitchen staff and told them that the straw was inappropriate, but took no other action than to tell the male kitchen employee responsible for the straw to apologize.

54. The male kitchen employee responsible for the straw did not apologize; instead, he told Charging Party that the penis straw "wasn't that big [of a] deal" and that the meeting was unnecessary.

55. Following the July 23, 2022, meeting regarding the straw incident, male kitchen staff's sexualized comments, hostility, and intimidation directed at Charging Party and the sabotage of Charging Party's work intensified.

56. The unwelcome sexual comments and conduct described in paragraphs 26-40—which had previously occurred regularly—became constant.

57. On multiple occasions, a group of male kitchen staff, including Ramon and the worker responsible for the straw, assembled near Charging Party's workstation and made specific, sexualized comments about her appearance.

58. The group of male kitchen staff mocked Charging Party's workplace complaints and said that "we can't say anything because Alina will cry about it," and told her that "you should go home."

59. Approximately one week after the July 23, 2022, meeting, Ramon approached Charging Party's workstation while intoxicated and yelled gender-based profanities at her including, "pinche vieja," and "pendeja." Sous chef Ramos witnessed Ramon's comments and laughed.

60. Approximately four times after the July 23, 2022, meeting, sous chef Ramos deliberately put hot food in Defendant's freezer, destroying the pastries and desserts that Charging Party had made for the evening's service.

61. Approximately one week before Charging Party resigned, Ramon broke chocolates that Charging Party had made, contaminated her baking tools by scattering food around them, and vandalized her workstation. Sous chef Ramos witnessed Ramon vandalizing Charging Party's workstation and laughed.

62. Charging Party was forced to resign from Defendant on or around August 18, 2022, because the working conditions were so intolerable.

63. Charging Party suffered damages.

## STATEMENT OF CLAIMS

64. As described in paragraphs 26 – 63, Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting Charging Party to a hostile work environment based on sex.

65. As described in paragraphs 26 – 63, Defendant constructively discharged Charging Party in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1) by creating, maintaining, and encouraging working conditions so intolerable that a reasonable person would be compelled to resign.

66. The unlawful employment practices complained of in paragraphs 26 – 63 were intentional.

67. The unlawful employment practices complained of in paragraphs 26 – 63 were done with malice or reckless indifference to the Charging Party's federally protected rights.

## PRAYER FOR RELIEF

WHEREFORE, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its owners, officers, mangers, successors, assigns, and all persons in active concert or participation with Defendant, from engaging in any employment practices which discriminate on the basis of sex;

B. Grant a permanent injunction enjoining Defendant, its owners, officers, manger, successors, assigns, and all persons in active concert or participation with Defendant, from creating, maintaining or encouraging a hostile work environment based on sex;

  C. Order Defendant to institute and carry out policies, practices and programs which provide and ensure equal employment opportunities for female employees and which eradicate the effects of its past and present unlawful practices;

  D. Order Defendant to make the Charging Party whole by providing compensatory damages for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

  E. Order Defendant to make the Charging Party whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to, emotional pain, humiliation, and inconvenience, in amounts to be determined at trial;

  F. Order Defendant to pay the Charging Party punitive damages for its malicious and reckless conduct described above, in an amount to be determined at trial;

  G. Grant such further relief as the Court deems necessary and proper in the public interest; and

  H. Award the Commission its costs in this action.

## **JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by this Complaint that are triable to a jury.

Dated: September 30, 2024

        KARLA GILBRIDE
        General Counsel

        CHRISTOPHER LAGE
        Deputy General Counsel

        U.S. EQUAL EMPLOYMENT OPPORTUNITY
        COMMISSION

131 M Street, N.E.
Washington D.C. 20507


KIMBERLY A. CRUZ
Regional Attorney


<u>/s/ Cara Chomski</u>
CARA B. CHOMSKI
Trial Attorney
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004-2112
Tel.: (929) 506-5275
cara.chomski@eeoc.gov